954 So.2d 296 (2007)
STATE of Louisiana, Appellee
v.
Richard P. JONES, Appellant.
No. 41,880-KA.
Court of Appeal of Louisiana, Second Circuit.
March 28, 2007.
*297 Richard P. Jones, Pro Se.
James E. Beal, Louisiana Appellate Project, for Appellant.
William R. Coenen, Jr., District Attorney, Penny W. Douciere, John M. Lancaster, Assistant District Attorneys, for Appellee.
Before BROWN, WILLIAMS, and CARAWAY, JJ.
BROWN, Chief Judge.
On March 10, 2003, Tracey Duprey, Bobby McCall, and Jonathan McCandlish set out on a night of drinking alcohol, smoking marijuana, and committing mischief in rural West Carroll Parish. At one point they stole the street sign for Little Creek Road. Tracey's ex-sister-in-law, Shawn Morrow, lived with defendant, Richard P. Jones, on Little Creek Road. Tracey had visited in defendant's home on several occasions. After taking the street sign, the trio decided to pull up defendant's mailbox. According to Tracey, their first attempt failed, and they tried again. Both McCall and McCandlish got out of the truck to reattach a chain to the mailbox. This occurred after midnight, and defendant, who was awakened by the noise, grabbed his 30/30 rifle, went outdoors, and fired off at least one round. McCall and McCandlish jumped back into their truck and left at a high rate of speed. At this point, defendant fired at the vehicle and hit it at least three times. One round went through the wheel well and passenger side seat. A fragment from this round struck Jonathan McCandlish. Tracey and Bobby took McCandlish to the Delhi Hospital where he died.
Defendant was indicted for second degree murder. A jury, however, found him guilty of manslaughter. The trial court imposed the minimum term of 20 years at hard labor without benefit of probation, parole, or suspension of sentence. Defendant *298 appealed his conviction and sentence. We affirm.

Discussion
Defendant's appellate counsel's only assignment of error was that defendant's sentence was excessive; however, defendant filed a pro se brief adding two other assignments of error.
Sufficiency of the Evidence
In his first pro se assignment of error, defendant alleges that the evidence presented was insufficient to support his conviction for manslaughter. In particular, defendant contends that his girlfriend, Shawn Morrow, gave perjured testimony and varying accounts of events which prejudiced and tainted the jury's verdict.
Shawn Morrow and her daughter, Jessica Gary, were living with defendant at the time of the incident. Jessica's boyfriend, Leo Cantou, had stayed over at defendant's house on the night of the shooting. Ms. Morrow testified that she knew the three people who attempted to pull down the mailbox at defendant's house. Tracey Duprey was her former sister-in-law and had visited with Shawn at defendant's home. On the night of the shooting, Ms. Morrow went to bed at approximately 9:30 p.m. She was awakened when she heard a truck outside the residence peeling out on Little Creek Road. Ms. Morrow saw defendant get out of bed, put on his pants, then fumble at the wall where he kept his guns. Ms. Morrow observed defendant leave the room with a gun.
Ms. Morrow testified that she heard the truck drive by, then turn around and again stop outside the house. Ms. Morrow stated that she heard the truck idling outside the house and heard defendant holler, "Hey m____ f____, what the hell do you think you're doing?" She then heard a gunshot, followed by running and the truck leaving at a high rate of speed, throwing gravel. She then heard several gunshots.
Defendant came back in the house yelling for Ms. Morrow to call 911. Defendant said that a tall, skinny, white guy had gotten out of a red truck, put a chain around the mailbox, and started pulling it out of the ground. That's when he hollered at them and shot at the tailgate. Defendant said that he had only seen one person in the truck. Defendant also stated that he believed he had hit the tailgate of the truck so he could identify it later. Defendant said that he thought it had been Tracey Duprey in the truck.
Ms. Morrow noted that she had purchased the mailbox, and she and defendant had installed it across from the residence. That morning several hours after the shooting, Ms. Morrow saw the mailbox and pole lying in the middle of the street.
On cross-examination, Ms. Morrow acknowledged that within a month of the incident there had been several acts of vandalism at the house, including someone "keying" defendant's son's truck, doors to the house being left open, horses being released, someone "cutting donuts" in their yard, as well as an attempt to hot wire defendant's four wheeler. She also testified that during that period they were getting a lot of phone calls late at night.
Jessica Gary testified that she was living with her mother and defendant at the time of the shooting. Leo Cantou had stayed overnight on the couch in the living room. Both Jessica and Leo's testimony was the same as that of Shawn Morrow, except to add that defendant said that he knew he got one of them and hoped he did.
Defendant gave statements to Louis Russell, chief criminal deputy for West Carroll Parish Sheriff's Office, after being informed that the victim had died. According to Deputy Russell, defendant got *299 sick and vomited upon hearing the news. Defendant's statements were recorded and played for the jury. In the statements defendant referred to "they," "the boy that was driving," and "the one that got out." During a second statement, defendant admitted that he didn't shoot into the air as he had said at first, but he aimed at the vehicle.
Tracy Duprey testified as to what occurred and stated that the entire incident was just a practical joke. Bobby McCall had died in an unrelated accident prior to trial. The investigating officers also testified, as well as a forensic pathologist and crime lab expert.
At the close of the prosecution, the defense rested without calling any witnesses.
Defendant claims that Shawn Morrow lied but has pointed to nothing in support of this claim. In fact, most of what Ms. Morrow testified to was in agreement with defendant's statement to the investigating officers. The evidence shows that defendant fired into a truck which he knew was occupied. Defendant claims that he did not intend to shoot anyone; however, manslaughter does not require an intent to kill or cause great bodily harm if the offender was engaged in certain felonies or any intentional misdemeanor directly affecting the person. See La. R.S. 14:31(A)(2)(a). The evidence was sufficient to prove all the elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
Denial of Motions for Mistrial
In his second pro se assignment of error, defendant alleges that the trial court erred in failing to grant a mistrial after the prosecution made prejudicial remarks concerning defendant's failure to testify and that the trial court should have granted a mistrial when a state witness, Tracey Duprey, was hospitalized after giving direct testimony, causing a break or delay before cross-examination.
Failure to grant a mistrial for comment by prosecution
Defendant takes issue with the following statement made by the prosecutor during rebuttal closing arguments:
I agree with (defense counsel), this is a tragedy, a terrible tragedy. But some times we have to pay for tragedies. He said (defendant) was sympathetic to Jonathan's family. You've heard him talk twice on statements that were played before you. Did you hear sympathy towards Jonathan? Did you hear sympathy for Jonathan's family? Or did you hear a man that knew what he was facing?
A mistrial shall be ordered, upon motion of a defendant, when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to, inter alia, the failure of the defendant to testify in his own defense. La. C. Cr. P. art. 770(3).
We find no error in the trial court's denial of defendant's motion for a mistrial. Defense counsel stated during closing arguments, "My sympathy and Richard's sympathy goes to the family of Jonathan." The prosecutor's remark simply asked whether the jury detected any sympathy in the recordings that they had heard. The remark was not a comment on defendant's failure to testify.
Failure to grant a mistrial for unavailable witness
La. Constitution article I, § 16 provides in part that an accused is entitled to confront and cross-examine the witnesses against him, to compel the attendance of witnesses, to present a defense, and to testify in his own behalf.
*300 Following direct examination, Tracey Duprey began having problems with acid reflux disease and was hospitalized. Upon being released from the hospital, Tracey returned and completed her testimony. Claiming that this interruption interfered with his presentation, defense counsel moved for a mistrial. We note that the delay allowed defense counsel more time to prepare an effective cross-examination. Regardless, there is no showing of prejudice or denial of the right of cross-examination. The fact that the witness was ill was adequately explained to the jury.
Excessive Sentence
Defendant argues that his sentence is excessive because the trial court failed to adequately consider mitigating factors. The trial court, however, did consider defendant's age, which was 44 years, and defendant's prior three felony convictions (simple burglary and two counts of theft). The court also mentioned that defendant was remorseful, took into account defendant's social history, and stated that it had read letters submitted on defendant's behalf.
La. R.S. 14:31(B) provides in part that whoever commits manslaughter shall be imprisoned at hard labor for not more than 40 years.
La. C. Cr. P. art. 893.3(E) provides in part that:
(1)(a) Notwithstanding any other provision of law to the contrary, if the defendant commits a felony with a firearm as provided for in this article, and the crime is considered a violent felony as defined in this paragraph, the court shall impose a minimum term of imprisonment of ten years. In addition, if the firearm is discharged during the commission of such a violent felony, the court shall impose a minimum term of imprisonment for twenty years.

(b) A "violent felony" for the purposes of this paragraph is: second degree sexual battery, aggravated burglary, car jacking, armed robbery, second degree kidnapping, manslaughter, or forcible rape.
(2) A sentence imposed under this paragraph shall be without benefit of parole, probation, or suspension of sentence. (Emphasis added).
Defendant's 20-year sentence is the minimum term provided by La. C. Cr. P. art. 893.3(E). A sentencing judge must start with the presumption that a mandatory minimum sentence is constitutional and may only depart downward if he finds clear and convincing evidence that, under the facts and circumstances, the minimum sentence is excessive. State v. Johnson, 97-1906 (La.03/04/98), 709 So.2d 672. The trial court did not so find and the record does not support such a departure.

Conclusion
For the reasons set forth above, defendant's conviction and sentence are AFFIRMED.